**In re WIL-LOW CAFETERIAS, Inc.**

**No. 68015.**

District Court, S. D. New York.
July 3, 1939.

Otterbourg, Steindler & Houston, of New York City (Arnold A. Jaffe, of New York City, of counsel), for trustee.

Boudin, Cohn & Glickstein, of New York City (Irving R. Feinberg and Vera Boudin, both of New York City, of counsel), for petitioner.

LEIBELL, District Judge.

This motion brings up for review an order of the referee in bankruptcy in this proceeding, dated April 17, 1939, expunging the claim of Simon Kaftan (No. 630) in the sum of $94. Claimant was an employee of the debtor, Wil-low Cafeterias, Inc., at its East 14th Street store and he had been receiving the sum of $47 per week for some time prior to June 7, 1938, when an order of liquidation was entered in this reorganization proceeding and a trustee appointed. The reorganization proceeding itself had been instituted April 20, 1937. Apparently efforts to work out a plan of reorganization failed. Hence the order of liquidation June 7, 1938. All twelve stores of the debtor (their restaurant fixtures and equipment) were sold by the trustee in liquidation on June 20, 1938, at public auction. The claimant was dismissed June 7, 1938, the day the order of liquidation was entered. Seven of the stores were closed that day and the balance soon thereafter.

Claimant was a member of Cafeteria Employees Union, Local 302. His claim herein is one selected as a test case for 200 similar claims of employees of debtor whose claims are for approximately two weeks' salary each, the total of their claims amounting to $7,000.

It appears that at the time the petition to reorganize under former Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was filed, April 20, 1937, the employees of debtor's stores were members of the Union and that the debtor and other chain restaurant owners had executed a contract with the Union covering the terms of employment. The order of April 20, 1937, approving the petition for reorganization as properly filed contained a provision authorizing the debtor to continue, manage and operate the business of the debtor and "to perform the existing contracts of the Debtor, but this authorization and action thereon by the Debtor shall in no case be deemed an approval by the Debtor in reorganization of any contract, lease, or other obligation of the debtor, such adoption to be made only by the further order of the Court". It does not appear that the Union contract then existing was ever thus formally adopted by an order of the Court; but the record indicates that the debtor continued to operate under the contract and that on May 11, 1938, this debtor by the Chairman of its Board executed another contract which does not appear to have been submitted to this Court for formal approval. The cafeterias of the debtor were operated under that contract until the order of liquidation about four weeks later, June 7, 1938. The application and interpretation of two paragraphs, No. 25 and No. 28, of that agreement are involved in this motion. There being nothing in the record or the briefs to the contrary, I assume that similar provisions were in the Union contract under which the cafeterias of the debtor were operated during the entire period of reorganization.

Paragraph 25 of the contract of May 11, 1938, reads as follows: "25. It is the intention of both parties that the Employer shall have the right to decide the number of employees necessary to the proper running of it business, subject, however, to the qualifications that if the Employer desires, because of lack of business to lay off any of its employees, the Union is to be notified at least one week in advance of the intended lay-off. In the event that a lay-off takes place, the principle of seniority throughout the chain shall be observed in determining who shall be laid off. In the event the Employer eliminates any particular position, the Employer agrees that it is to be the lowest paid position in that particular category that is to be abolished. However, this paragraph is not to be so construed as to mean that an unqualified man is to be kept on in the category in which a lay-off becomes necessary. The employer further agrees that he will offer the first opportunity for reinstatement to those employees who have been laid off in the order of their seniority, and the provision for one week's notice shall apply also in case lay-offs are due to the closing of a store."

█ Claimant also contends "that it has been the custom under the operation of this particular clause that when a man is laid off whether by closing of a store or for any other reason, he is given one week's notice or one week's salary in lieu of notice." The alleged custom would in effect enlarge the provisions of Clause 25 by adding at the end thereof the words "or for any other reason". If such a custom existed, how is it that it was not expressed in so recent a contract as the one made four weeks before the business was ordered liquidated? When the contract of May 11, 1938 was signed all parties knew that the reorganization proceeding of the debtor was still pending and that there was the possibility at least that an order of liquidation would be entered. If it was desirous that provision be made in the contract requiring a week's notice to the employees of any such action by the Court, the matter should have been called to the Court's attention by proper application. The Court could thus have exercised its discretion in the matter, with a knowledge of the situation then presented.

I have concluded that whatever rights claimant had to a week's notice must be determined by a proper construction of the contract, regardless of any alleged custom.

█ The referee found that the contract of May 11, 1938 made by debtor with the Union had never been approved by a Court order and that therefore it was not binding and he dismissed the claim. He expressed the opinion that if the contract

688

had been approved by Court order, claimant would have been entitled to a week's notice under paragraph 25 and his claim for $47 in lieu of the week's notice would have been good as a general claim, based on breach of contract. Claimant was unemployed for at least two weeks after June 7, 1938.

Whether or not there was a failure to obtain an order formally approving the Union contract under which claimant was employed, there is no question but that the cafeterias of the debtor were operated under a Union contract during the period of reorganization. The contract was never disapproved. I think it was valid and binding and that the claim should not be expunged solely because no formal Court order was entered approving the Union contract.

■ But when we come to construe paragraph 25 it is apparent that it was intended to apply to temporary lay-offs due to slack work, and to the closing of a store in the chain; but not to a situation where the entire business of the chain is closed and liquidated in legal proceedings pursuant to Court order, as was done here between June 7 and June 20, 1938.

■ One half the $94 claim herein is for one week's salary due to the fact that the claimant did not receive a week's notice when he was discharged by the temporary trustee herein, when the business was ordered liquidated on June 7, 1938. The other half of the claim is for a week's salary, in lieu of a week's vacation with pay, which claimant contends he is entitled to under the provisions of Paragraph 28 of the Union contract of May 11, 1938.

Paragraph 28 provides: "28. All full time employees who will have completed six (6) months employment during the months of June, July, August or September shall be entitled to three (3) days' vacation with pay. All full time workers who will have completed one (1) year employment during the said months shall be entitled to a week's vacation with pay. All vacations shall take place during the months of June, July, August and September, but may take place at any other time by consent of the Union and the Employer."

Claimant contends that he had worked for the debtor at its East 14th Street store for nine years, and for more than a year during the reorganization of the debtor, and that he had earned by reason of the services he had rendered during the preceding year under the terms of his employment the right to a week's vacation with pay, for which he claims $47.

The referee held that the contract was not binding because not formally approved by the Court, but that, assuming it had been approved, the action of the temporary trustee in discharging claimant would bar him from any claim for his vacation money. I have indicated above that in my opinion the contract with the Union was in force during the reorganization period, even though a formal order of approval was not entered. Further, I believe that the claimant actually earned the week's pay without further work, by the services claimant rendered under the contract while working for the debtor during a whole year of the reorganization period. This is not a claim for damages due to breach of contract. It is in substance a claim for wages actually earned and is an administration expense in this 77B proceeding. I am of the opinion that the action of the temporary trustee in closing down the business in the first week in June did not eliminate the vacation provision from the contract. The six months' or year's employment period should be measured back from the date the temporary trustee discharged the employee, in determining whether an employee qualifies and has a claim under Paragraph 28. Whether or not an employee was immediately re-employed by some other company does not affect his right to his vacation money from this debtor.

There is not sufficient money on hand to pay all the expenses of administration herein. This claim (No. 630), to the extent to which it is allowed ($47), will, as any other administration expense, receive its proportionate share of the funds available for distribution.

Submit order on notice.